Filed 3/4/13  P. v. Nguyen CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>HAC NHU NGUYEN,<br><br>    Defendant and Appellant. | G046140<br><br>(Super. Ct. No. 10WF2235)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, William D. Claster, Judge.  Affirmed.

Phillip I. Bronson, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Peter Quon, Jr., and Anthony Da Silva, Deputy Attorneys General, for Plaintiff and Respondent.

Appellant was convicted of burglary and making a criminal threat against his former girlfriend Lan Phan. On appeal, he contends there is insufficient evidence to support the latter conviction and his attorney was ineffective for failing to challenge the prosecutor's characterization of the evidence in closing argument. He also alleges evidentiary, instructional and sentencing error. Finding his arguments unavailing, we affirm the judgment.

FACTS

Phan dated appellant on and off over a period of years. But, by July 2010, she had permanently broken up with him, and they had not talked in over a year. So when appellant showed up at her house on July 23, she was quite surprised. She invited appellant inside to talk, but he was in no mood. His manner was rude and angry, and his aggressive body language made Phan very uncomfortable. After a few minutes, she asked him to leave. When he refused, she yelled for her roommate Daryl Ramos, who confronted appellant. Appellant argued with Ramos briefly but departed after Ramos threatened to call the police.

Four days later, on the night of July 27, appellant returned to the house. Phan, who lived in a converted bedroom in the garage, was watching television on her bed when appellant barged into her room without notice. He pulled her off the bed and began dragging her across the floor. Phan screamed for help and tried to resist, but appellant was too strong. Grabbing Phan by the hair, he dragged her out of the garage and all the way to the street. He called Phan – inexplicably – a "motherfucker" and threatened to beat her up and kill her.

Hearing the commotion, Ramos ran outside to see what was going on. On the walkway near the street, he saw appellant kneeling on top of Phan, hitting her. Ramos confronted appellant, chased him away and called 911. When the police arrived,

2

Phan was crying and distraught. She suffered numerous scrapes, scratches and bruises as a result of the attack.

At trial, Phan testified she took appellant's threat to kill her seriously because he had threatened her in the past. She described an incident from March 2006 when appellant called her over to his house and angrily accused her of seeing another man. She denied it, but he slapped her in the face and threatened to cut her hair. Phan screamed for help and made a dash for the door, but appellant pulled her back by her hair and started hitting her. At that point, the police arrived. When appellant ignored their demand to back away from Phan, they forcibly took him into custody.

Appellant was charged with burglary and making a criminal threat. The prosecution theorized appellant entered Phan's garage that night with the intent to kidnap, falsely imprison and terrorize her, and he did in fact terrorize her when he told her he was going to beat her up and kill her.

Appellant did not present any evidence in his defense. In closing argument his attorney argued appellant's threats may have been cruel and mean-spirited, but they were not criminal. Defense counsel also submitted appellant was not guilty of burglary because his sole objective in confronting Phan that night was to retrieve some of his personal items from her. Phan did testify that after she broke up with appellant, he had asked her to hold on to some of his belongings. On cross-examination, she also said appellant had asked about his belongings when he attacked her in her garage. However, on redirect, Phan clarified the timing of that conversation. She explained appellant did not actually mention anything about her having his belongings on the night he attacked her in the garage. Rather, he brought up that issue a few days later when he called her on the phone. Asked specifically what appellant said to her on the night of the attack, Phan said, "He just cursed me. He said, 'You motherfucker. I'm going to beat you up. I'm going to kill you.'"

3

In the end, the jury convicted appellant as charged. After finding appellant had served three prior prison terms, the trial court sentenced him to seven years in prison.

I

Appellant contends there is insufficient evidence to support his conviction for making a criminal threat. We disagree.

"The proper test for determining a claim of insufficiency of evidence in a criminal case is whether, on the entire record, a rational trier of fact could find the defendant guilty beyond a reasonable doubt. [Citations.] On appeal, we must view the evidence in the light most favorable to the People and must presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. [Citation.] [¶] Although we must ensure the evidence is reasonable, credible, and of solid value, nonetheless it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts on which that determination depends. [Citation.] Thus, if the verdict is supported by substantial evidence, we must accord due deference to the trier of fact and not substitute our evaluation of a witness's credibility for that of the fact finder. [Citations.]" (*People v. Jones* (1990) 51 Cal.3d 294, 314.)

The crime of making a criminal threat has five basic elements. The prosecution must prove: "(1) that the defendant 'willfully threaten[ed] to commit a crime which will result in death or great bodily injury to another person,' (2) that the defendant made the threat 'with the specific intent that the statement . . . is to be taken as a threat, even if there is no intent of actually carrying it out,' (3) that the threat . . . was 'on its face and under the circumstances in which it [was] made, . . . so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat,' (4) that the threat actually caused the person threatened 'to be in sustained fear for his or her own safety or for his or her

4

immediate family's safety,' and (5) that the threatened person's fear was 'reasonabl[e]' under the circumstances. [Citation.]" (*People v. Toledo* (2001) 26 Cal.4th 221, 227-228, quoting Pen. Code, § 422.)

Appellant argues his threat to kill Phan was nothing more than "sheer bravado." In his view, the threat "failed to convey a 'gravity and seriousness of purpose and immediate prospect of execution because it was merely an angry utterance that arose out of [his] perception that Phan had not or would not return his property.' [Citation.]" The record shows otherwise.

Phan was not a perfect witness by any means. She contradicted herself about whether appellant mentioned anything about his belongings when he attacked her on the night in question. And she also admitted she was convicted of petty theft in 2005. However, it is undisputed appellant physically abused her on multiple occasions. Given the ordeal he put her through, it is not terribly surprising her recollection of events might be somewhat foggy. In any event, we are not at liberty to reassess her credibility on appeal. Rather, as we have explained, we must review the record in the light most favorable to the verdict and afford considerable deference to the jury's implied determination Phan was credible. That being the case, we are not inclined to conclude appellant's attack on Phan was motivated by a desire to retrieve his personal belongings.

And even if that was appellant's motive, the totality of the circumstances were such that the jury could reasonably find his threats had the requisite gravity of purpose and immediate prospect of execution. Appellant had threatened and attacked Phan in the past, and when he barged into her garage on the night in question, he immediately grabbed her and began dragging her on the floor. Phan screamed for help and tried to resist, but appellant was relentless. Overpowering Phan, he grabbed her by the hair, pulled her outside and dragged her on the ground all the way to the street, where

5

he began hitting her. He didn't abandon the attack until Ramos intervened and chased him away.

Not only was appellant's conduct brutal, the threats he made to Phan about beating her up and killing her were direct and unequivocal. There was nothing vague or ambiguous about what he said. And there was nothing in his acts to indicate he was anything but deadly serious. Considering all the circumstances, the jury could reasonably find these were not merely hollow words of angst and frustration but instead conveyed the requisite gravity of purpose and immediate prospect of execution so as to support his conviction for making a criminal threat. We reject appellant's challenge to the sufficiency of the evidence.

## II

Appellant also contends his attorney was ineffective for failing to object to the prosecutor's characterization of the evidence in closing argument. Again, we disagree.

The challenged remarks came during the prosecution's rebuttal argument. Responding to defense counsel's claim appellant entered Phan's garage merely to confront her about his belongings, the prosecutor argued "there is zero . . . evidence that [appellant] intended to go over there and get his stuff. None. There is absolutely none." Appellant faults his attorney for failing to object to this statement because, as set forth above, Phan did say at one point during her testimony that appellant confronted her about his belongings when he entered her garage. Nonetheless, defense counsel's failure to object could not have been prejudicial because the prosecutor subsequently acknowledged this fact in her closing argument.

Indeed, on the heels of the challenged remarks, the prosecutor recognized Phan's testimony about what appellant said to her during the attack was "a little bit confusing" due to the answers that defense counsel elicited from her on cross-

6

examination.  The prosecutor attributed this to the fact defense counsel was allowed to ask Phan leading questions and suggest certain things to her.  The prosecutor alleged Phan was confused by this questioning and simply answered "yes" without really understanding what she was being asked.

Regardless of whether or not that was true, it is clear the prosecutor recognized that Phan did in fact give conflicting evidence on the issue of whether appellant confronted her about his belongings during the subject attack.  The record also shows that the trial court repeatedly instructed the jury that closing arguments are simply the attorneys' own interpretation of the evidence.  It properly explained that "nothing that the attorneys say is evidence" and "only the witness' answers are evidence."  In light of this, it is not reasonably likely appellant would have obtained a more favorable outcome had his attorney objected to the challenged remarks.  Therefore, his attorney was not ineffective for failing to do so.  (*Strickland v. Washington* (1984) 466 U.S. 668, 694.)

## III

The next issue is whether the trial court erred in allowing the prosecution to present evidence regarding the incident that occurred at appellant's house in 2006.  The evidence was admitted for two purposes:  1) To prove appellant's intent during the charged offenses, and 2) to show he had a propensity for domestic violence.  We find the evidence was properly admitted for both purposes.

Evidence of the defendant's prior bad acts is generally inadmissible to prove his behavior on a specific occasion or his propensity for criminal activity.  (Evid. Code, § 1101, subd. (a).)[1]  However, such evidence may be admitted to prove some other material fact in the case, such as the defendant's intent or the reasonableness of the victim's fear.  (§ 1101, subd. (b); *People v. Ogle* (2010) 185 Cal.App.4th 1138, 1145.)

---

[1]  Unless noted otherwise, all further statutory references are to the Evidence Code.

7

An exception to the propensity rule also exists in cases involving domestic violence. In such cases, "evidence of the defendant's commission of other domestic violence is not made inadmissible by Section 1101 if the evidence is not inadmissible pursuant to Section 352." (§ 1109, subd. (a)(1).) So long as the uncharged acts of domestic violence are not barred by section 352, the jury may consider them to show the defendant is predisposed to commit acts of domestic violence and he committed the charged offenses. (*People v. Ogle, supra*, 185 Cal.App.4th at p. 1143; *People v. Johnson* (2010) 185 Cal.App.4th 520, 528.)

In this case, defense counsel argued that when appellant threatened to beat and kill Phan in the garage, he only intended to humiliate and debase her, not terrorize her. Defense counsel also questioned whether the statement actually caused Phan to fear for her well-being. Obviously, the fact appellant had threatened and attacked Phan in the past had logical bearing on those issues. Phan testified that during the 2006 incident, appellant slapped her in the face and threatened to cut her hair and beat her up. And when she tried to leave, he grabbed her by the hair and started hitting her. This incident vividly demonstrated that appellant's threats were not just empty words. It showed appellant considered violence an appropriate way of dealing with his problems, and Phan had good reason to take his threats seriously given what he had done to her in the past. Accordingly, the evidence was quite relevant to the charge of making a criminal threat.

Arguing the evidence was highly inflammatory, appellant claims it still should have been excluded under section 352. Under that section, the court may exclude evidence if its probative value is substantially outweighed by the probability its admission would cause undue delay, confusion or prejudice. The trial court has broad discretion under this section, and its decision to admit certain evidence will not be disturbed unless it is arbitrary, capricious or patently absurd. (*People v. Kelly* (2007) 42 Cal.4th 763, 783; *People v. Rodrigues* (1994) 8 Cal.4th 1060, 1124.)

The trial court's decision to admit the evidence of the encounter that occurred between appellant and Phan in 2006 was none of these things. The encounter occurred just four years before the present case arose, the facts surrounding it were undisputed, and its retelling at trial did not consume an undue amount of time. Moreover, the prior incident was no worse than the charged offenses in terms of violence and depravity. On both occasions appellant and Phan were alone when he threatened her with physical violence, on both occasions he hit her and pulled her hair, and on both occasions the police were summoned. The similarities between the two attacks enhanced the probative value of the prior incident and reduced the danger it would unduly prejudice the jury. (Compare *People v. Harris* (1998) 60 Cal.App.4th 727 [where nurse was accused of fondling two of his patients, the trial court erred in admitting evidence implicating him in a decades-old attack during which the victim was viciously beaten and sexually exploited during a perverse attack in her apartment].) The trial court did not abuse its discretion in failing to exclude evidence of the incident under section 352.

Even so, appellant argues the evidence should not have been admitted to prove his propensity for domestic violence under section 1109 because he and appellant never had a dating relationship. For purposes of the propensity rule, a dating relationship is one that is characterized by frequent, intimate associations. The relationship must be more than causal or business like, but it does not require serious courtship, exclusivity or shared expectations of growth. (*People v. Rucker* (2005) 126 Cal.App.4th 1107, 1114-1117.)

Describing her past relationship with appellant, Phan initially testified they were "just friends." However, she subsequently admitted that she "dated" appellant on and off for several years. When asked if she was aware that the word "dated" meant that she and appellant had been "boyfriend and girlfriend" and had "a romantic relationship,"

Phan said she understood this. She then stated appellant had been her "boyfriend for about two years" before he "turned violent."

Based on this testimony, there was sufficient evidence to conclude Phan and appellant had been in a dating relationship for purposes of section 1109. Therefore, the evidence of their violent encounter in 2006 was admissible not only to show appellant's intent and the reasonableness of Phan's fear during the charged offenses, it was also admissible to show appellant's propensity for domestic violence and the likelihood he committed the charged offenses. The trial court did not abuse its discretion in admitting the evidence, and allowing the jury to consider it, for these purposes.

IV

Lastly, relying on Penal Code section 654, appellant claims the trial court should have stayed his sentence for making a criminal threat. The point is not well taken.

Penal Code section 654 prohibits multiple punishment for a single act. It also prohibits multiple punishment for an indivisible course of criminal conduct if all of the offenses were incident to a single objective. (*People v. Latimer* (1993) 5 Cal.4th 1203, 1208.) Appellant argues his crimes shared but one objective, i.e., "to frighten and intimidate" Phan. But if his objective was to both frighten *and* intimidate her, then he necessarily harbored more than one objective during the attack.

We need not decide the case on that basis, however. Irrespective of appellant's intent to inflict different kinds of mental harm on Phan, the record vividly shows he also intended to physically harm her. In fact, the very first thing he did when he entered Phan's room was to grab her and start dragging her across the floor. Phan screamed and resisted, but appellant forcibly dragged her all the way to the street on the ground. There he pummeled her until he was pulled away. As the prosecutor noted in closing argument, this indicates appellant entered Phan's room not only to terrorize her

10

with his words, but to physically control and abuse her as well.  The record clearly supports the inference appellant possessed multiple intents in attacking Phan, and therefore Penal Code section 654 does not apply.[2]

DISPOSITION

The judgment is affirmed.

BEDSWORTH, J.

WE CONCUR:

O'LEARY, P. J.

RYLAARSDAM, J.

---

[2]   Appellant also contends the cumulative effect of the court's errors rendered his trial fundamentally unfair.  Having found no merit in even one of appellant's claims, this argument necessarily fails, as well.